BAYOU METO DRAINAGE DISTRICT No. 1 v. KOCHTITZKY.

Opinion delivered June 15, 1925.

1. DRAINS—EXTRA EXPENSE IN CLEARING RIGHT-OF-WAY.—Under a contract for construction of a drainage ditch, requiring trees and shrubs to be cut off the right-of-way, the contractor was not entitled to extra compensation for the expense of clearing this right-of-way by the use of teams for removing debris, though, in making the contract he expected to be able to effect such clearing with a dredge boat; such expense not falling within a clause providing for payment for extra work not specified in the contract.

2. DRAINS—EXTRA EXPENSE—LIABILITY OF DISTRICT.—Under a contract for the construction of a drainage district which obligated the contractor to remove logs and stumps from the right-of-way, though, in making the contract, the contractor contemplated removing them with a dredge boat, the fact that the commissioners knew that he would not be able to do so without the use of teams did not render the district liable to pay the contractor extra for doing the work in that way.

3. DRAINS—GUARANTY OF YARDAGE CONSTRUED.—A contract for the construction of a drainage ditch, by which the district guaranteed the contractor all excavations of 90 per cent. of the total yardage in the district on the total mileage as estimated by its engineer, *held* to mean that the guaranty applied to the total yardage, and not to each item in the specifications.

4. INTEREST ON RETAINED PERCENTAGE.—Under a contract for the construction of a drainage ditch, with provisions for a retained percentage by the district, the contractor was entitled to interest on the percentage retained by the district from the date of the completion of the work to the date of the decree, notwithstanding that he had agreed that any floating timber should be removed at his expense, where it does not appear that the district incurred any expense on this account.

5. DRAINS—DAMAGES FOR UNCOMPLETED WORK.—Under the contract for the construction of a drainage ditch, the district was not entitled to damage for failure to complete the work.

6. DRAINS—DAMAGES FOR DELAY IN COMPLETING DITCH.—Under a contract for constructing a drainage ditch, providing that unavoidable delays or extension of time with the consent of the district's engineers should not be charged against the contractor. the drainage district was not entitled to damages for delay in completing the work and for extra engineering charges during alleged overtime, where such delays were unavoidable, and the commissioners acquiesced therein, and did not intimate an intention to make charge therefor.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; modified.

*Wallace Townsend,* for appellant.

*Gray & Morris* and *Chas. A. Walls,* for appellee.

McCULLOCH, C. J. Appellant is a drainage district, organized for the purpose of constructing a drainage system in a large area in Lonoke County. The plans contemplated 69.8 miles of ditches, including Bayou Meto for a distance of twenty-five miles, the main ditch, 22 miles in length, and eleven lateral ditches, and a cut-off ditch, in addition to cleaning and dredging Bayou Meto for a distance of 25 miles to make it part of the system. Appellee was the successful bidder for the work, and entered into a written contract with appellant. The work was begun in the year 1920, and most of the work was completed in the year 1922, and there was a final

completion, according to the finding by the chancery court, on May 1, 1923. This is an action instituted by appellee to recover the balance alleged to be due for work done under the contract. Appellant answered denying the amount of earned compensation claimed by appellee, and also filed a counterclaim for damages on account of alleged defective work and for delay in completing the improvement.

The contract called for payment for the work on estimates of the engineer, with the retention of twenty per cent. of each item, to be held back until completion of the contract. It is agreed by both parties that the aggregate retained percentage was $71,763.17, the controversy arising over additional items for which appellee made claim and over items of damage claimed by appellant in reduction of the amount due from retained percentage. There was a reference made to a master, who was to take testimony and state the account, which was done, and the court, on hearing the exceptions to the master's report, rendered a decree in favor of appellee for the sum of $96,102.17, and dismissed appellant's cross complaint for want of equity. There is a small item of $69.48 to be added to the retained percentage, about which there is no controversy except as to allowance of interest thereon. The interest item on that amount is very small, but we see no reason why appellee is not entitled to it.

The first item of any importance claimed by the appellee, in addition to the amount of retained percentage, and which was allowed by the chancery court, is the sum of $9,097.59 for work done on what is termed force account. Section 25 of the specifications reads as follows:

"Force Account. All work not contemplated or set out in these plans or specifications, which will be later found necessary to be done, will be done by the contractor at the actual cost to him, as determined by the engineer, plus 15 per cent. Under this head would come such items as removing and replacing fences, bridges, re-

moving houses, and all other work that cannot be foreseen at this time. Extra work will be paid for only on the written order from the engineer, and should not be undertaken without the engineer's written order to do so."

The claim is based on work done in clearing the right of way. The controversy relates to certain sections of the work along Bayou Meto, which is a deep and wide stream of water with high banks in some places and low banks in other places. The specifications in regard to clearing reads, originally, as follows:

"*Right-of-Way Clearing*. The right-of-way should be a minimum of eighty feet, and in general should be equal to the bottom width of the ditch, plus seventy feet. Widths above that at the discretion of the board and the engineer. Right-of-way for team ditches should not be less than enough to leave a clear ten-foot berm on each side and room for the waste banks.

"All trees and shrubs are to be cut off the entire right-of-way and burned or otherwise removed, to the end that the right-of-way may have a clean, neat appearance. Clearing will be paid for per acre per price bid."

However, before the contract was let to appellee, the last paragraph of § 24 was changed to read as follows:

"That all trees and shrubs are to be cut off the entire right-of-way and removed back or under the spoil-banks, to the end that the right-of-way have a clean, neat appearance."

Other parts of the contract provided that the Bayou Meto excavation should be a width of fifty feet at the bottom, with sloping banks, and the evidence shows that the excavation work was intended to be done, and was done, with a large dredge boat fifty-four feet in width with a boom of sufficient length to deposit the waste seventy-five feet on each side from the center of the stream or ditch. The evidence also shows that it was the intention of appellant to cut the trees, and then remove the stumps and trunks and debris with the dipper of the dredge. All of the parties connected with the work,

including the commissioners, doubtless had in mind that
the clearing would be done in that way at the time the
contract was made, but there is no specification in the
contract with reference to that part of the work except
those provisions quoted above. That method was pur-
sued in doing the clearing from the beginning of the
work on Bayou Meto at station 3 up to station 429 when
it was found that on account of the low banks and the
depth of the stream there was not enough waste material
to cover the logs, stumps and other debris so as to pre-
vent it floating back into the stream in times of high
water and the same could not be handled and deposited
by the dredge boat outside of the limits of the right-of-
way; hence it was found necessary to clear the right-of-
way by use of teams so that the debris could be hauled
outside the limits of the right-of-way. Appellee claims
that this constituted a change in the contract for which
he is entitled to extra pay on force account, as provided
in § 25 of the specifications. The chancery court took this
view of the matter and allowed appellee the item of
$9,097.59, which included the cost of clearing and the fif-
teen per cent. additional provided by the contract for
payment on force account. Our conclusion is that the
allowance was improper, and that the item did not fall
within the clause providing for payment for extra work.
Section 25 was not intended to cover extra cost of differ-
ent methods of doing the work unless it constituted a
change in the plans and specifications. The intention of
the parties, as gathered from a fair interpretation of
the language used, is that it was to provide compen-
sation for work which was not specified in the con-
tract. There could be no claim on account of change in
the method of doing the clearing, for there was no
method specified. All that the contract provided on
that subject was that the "trees and shrubs are to be
cut off the entire right-of-way and removed back or
under the spoil-banks, to the end that the right-of-way
may have a clean, neat appearance." The effect of this

provision was to require that all of the debris be placed either under the spoil-banks or removed from the right-of-way back of the spoil-banks; otherwise the right-of-way could not "have a clean, neat appearance." Under those terms of the contract, the debris could not be left exposed on the right-of-way, and if there was not sufficient deposit of waste dirt to constitute a spoil-bank to cover the debris, then, under the contract, it was appellee's duty to remove it off of the right-of-way. The contract did not bind appellee to any particular method of doing the work, and he took his chances on doing it in any way that was necessary to accomplish the results specified in the contract. Notwithstanding the fact that he expected to be able to do it with the dredge boat and it turned out that another and more expensive method of work was necessary, it was his loss and not that of the district.

There is much testimony concerning the correspondence and dealings between the parties with reference to this work, and it is contended that the conduct of the commissioners constituted an acquiescence in appellee's doing the work on force account, but we are of the opinion that there was no waiver of the right of the district as to the method in which this work was to be done. It is true that the evidence shows that the commissioners knew that the clearing would have to be done with teams after they passed station 429, but the recognition of this fact by the commissioners did not commit them to an agreement to pay appellee extra for doing the work in that way.

The next item claimed by appellee and allowed by the chancellor, in addition to the retained percentage, is $10.623.72 on account of there being less than the guaranteed amount of excavation. In the specifications prepared by the engineer, which became part of the contract, there was set forth an itemized statement of the mileage of each ditch and the amount of cubic yards of dredging. The aggregate mileage in this statement was 69.8 miles, and 3,046,850 cubic yards of dredging. The contract

contains the following provision with reference to guaranty of total yardage: "The party of the first part (district) further agrees that it will guarantee to said party of the second part (contractor) an excavation of 90 per cent. of the total yardage in said district upon the total mileage as estimated by the engineer of said district." According to the undisputed proof, appellant has been allowed for 3,227,127 cubic yards of dredging. This is 287,277 cubic yards in excess of the total yardage estimated for the whole project. But the contention of appellee is that the language of the guaranty should be interpreted to mean that each item in the specification should be considered separately, so as to entitle him to an allowance of ninety per cent. of each item, regardless of the total. The contention is that the words, "as estimated by the engineer of said district," confirm that interpretation. We do not so interpret the contract, for it appears to us that the language meant that the guaranty applied to the total yardage and not to a separate guaranty on each item. The court was therefore in error in allowing this item.

It is next contended that the court erred in allowing interest on the retained percentage from the date of the completion of the work on May 1, 1923, up to the date of the decree. We perceive no reason why appellee is not entitled to interest on the amount due him from the time it should have been paid to him on the completion of the contract. The funds were not to be retained any longer and the failure to pay at that time started the period for which interest should be allowed. It is the contention of appellant that there should be no allowance of interest for the reason that appellee accepted payment on an estimate pursuant to the resolution of the board of commissioners to the effect that the payment should be made "with the understanding that any floating timber that may enter the stream in the work now performed, shall be removed at the cost of the contractor." There is no evidence that the

expense of removing floating timber would amount to any considerable sum, but, even if it did, this would not prolong the period of payment beyond the completion of the contract in other respects. If there was any expense to the district on this account, there should be a deduction for the cost, but none is shown. There is a slight discrepancy of one month as to the date of the completion of the contract, it being claimed by one party that it was completed on June 1, and by the other that it was completed on May 1. We accept the finding of the trial court as correct, that the contract was completed on May 1, and interest should run from that date.

This brings us to a consideration of the items of damage claimed by appellant in its cross-complaint.

There is a claim of damages in the sum of $24,160.23 for alleged defective work and for delay in completion of the work, and also the additional sum of $4,040 for extra engineering charges during the alleged overtime. We are of the opinion that the chancellor was correct in refusing to allow any part of these amounts. There appears to have been no complaint in regard to the work from station No. 3 up to station No. 340, but when the work reached station 429, estimate No. 34 was made by the engineer, dated June 6, 1921, with the following indorsement thereon: "I recommend that $537.23 be retained to cover the expense of removing logs from the right-of-way from station 340 to 429." Pursuant to the recommendation, this amount was withheld by the board to cover the expense of doing that work, and the indorsement of the engineer must be taken as an estimate that this sum would be sufficient to remove the logs so as to complete the work. The clearing thereafter was satisfactorily done, and the only controversy arose over appellee's claim for extra payment on force account. It is claimed that there were other defects for which damage should be allowed. There is a sharp conflict in the testimony as to the extent of those defects. The evidence is very voluminous. There is an enormous record

before us, but, after having carefully considered it, we can do no more than state our conclusions from this testimony. We are of the opinion that appellant has not shown its right to recover any amount of damage in excess of the $537.23 retained for that purpose, and the retention of that item is not involved in the present controversy. The contract contained the following provision with respect to liquidated damages for delay in completion of the work.

"It is further agreed that if the party of the second part fails or refuses to complete said work in the manner and within the time specified herein, plus allowances made, then and in such event the party of the second part shall pay, in addition to the engineering and inspection charges made in the specifications, an amount equal to 6 per cent. a year on the total contract price to the commissioners of the said drainage district, as liquidated damages of said district for the entire time of such extension beyond the time allowed for completion as outlined in the specifications."

Another provision on the subject of extension of time is as follows:

"No extension of time on account of lack of water, or for other causes, shall be made, unless the engineer shall be notified in writing of the necessity for delay, and shall decide that such necessity exists."

And still another provision of the contract on that subject is as follows:

"But an unavoidable delay shall entitle him to an extension of time allowed for the completion of the work sufficient to cover the time lost by such delay."

Another provision of the contract fixed thirty-eight months as the period within which the work should be completed.

The substance of these provisions, when read together, is that unavoidable delays or extensions of time with consent of the engineer are not chargeable against the contractor as delays for which damages are

to be allowed.   There is proof that there were unavoidable delays, especially with reference to the change in the method of clearing the right-of-way below station 429.   Communications between the parties show at least that the commissioners acquiesced in this method of doing the work, and there was no intimation of an intention to charge for the necessary delay in doing the work according to the changed method.   There is also proof of excessive rains and the overflow of a large part of the area to be drained, which necessarily delayed the work. We are of the opinion that the chancellor was correct in holding that no charge should be made on this account.

Adding to the amount of retained percentage, the item of $69.48 for error in computation, and the item of $3,985.73 for interest from the date of the decree, makes a total of $75,818.38.

The decree dismissing the cross-complaint of appellant is therefore affirmed, and the decree in favor of appellee is modified so as to reduce the sum to be recovered to the amount last named above.   It is so ordered.